Andrea Lynn BENOLKIN,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. CX–86–2223.

Court of Appeals of Minnesota.

July 14, 1987.

Faison T. Sessoms, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by LANSING, P.J., HUSPENI and RANDALL, JJ.

## OPINION

LANSING, Judge.

Appellant Andrea Benolkin was arrested for driving while under the influence of alcohol. She refused to take a breath test and her driving privileges were revoked under the implied consent law. She peti-

tioned for judicial review, asserting that her refusal was reasonable. The trial court sustained the revocation and Benolkin appeals from the trial court's order. We affirm.

## FACTS

At approximately 1:30 a.m. on August 7, 1986, Hopkins Police Officer Patrick Malone, a certified peace officer, observed a vehicle weaving from side to side in its lane of traffic. After nearly striking the curb along the roadside, the vehicle resumed weaving from side to side. Malone stopped the vehicle and identified the driver as Andrea Lynn Benolkin.

Malone detected a strong odor of alcoholic beverage coming from inside the car and from Benolkin. Her speech was slurred and hard to understand. Malone asked her to perform a number of field sobriety tests, all of which she failed to successfully complete.

Malone asked Benolkin to step back to his squad car; she went to her own car instead. She refused to leave despite several requests. She had to be physically taken from her car back to Malone's squad car.

After forming the opinion that Benolkin was driving a vehicle while under the influence of alcohol, Malone placed her under arrest for a violation of Minn.Stat. § 169.-121 (1986). He read her the Minnesota implied consent advisory. Benolkin said she understood the advisory and agreed to take a breath test.

Malone started the procedure for the Intoxilyzer test at the Hopkins Police Station, but noticed that the instrument was not functioning properly. The first test record inserted had a printout which showed an obvious malfunction. He tried again and obtained the same printout. Malone did not ask Benolkin to blow into the machine. Instead, he asked Benolkin to accompany him to the Minnetonka Police Station to use their Intoxilyzer machine. Benolkin agreed.

Malone testified that it is common procedure to use Intoxilyzer machines in a neighboring jurisdiction if a certified Intoxilyzer operator is not available or if the machine is not working. Officers from other jurisdictions, such as St. Louis Park or Minnetonka, also bring drivers to Hopkins for Intoxilyzer tests.

At the Minnetonka station, Benolkin informed Malone that she would not take a breath test. Malone testified that she did not appear to have any physical problem or disability that would prevent her from taking an Intoxilyzer test, nor did she claim a physical problem. Despite her indicated refusal, Malone began the Intoxilyzer test; the four-minute cycle for the first subject test was completed without Benolkin making any effort to provide a breath sample. Malone testified that, in his opinion as a certified operator, the Intoxilyzer machine was working properly at the time he began the testing procedure and when he offered the breath test to Benolkin.

The trial court sustained the revocation and Benolkin appeals the trial court's order.

## ISSUE

Did the trial court err in concluding appellant failed to meet her burden of proving that her refusal was reasonable?

## ANALYSIS

A driver who has refused testing may assert as an affirmative defense that the refusal was based on reasonable grounds. Minn.Stat. § 169.123, subd. 6. In sustaining the revocation, the trial court concluded Benolkin failed to prove her refusal to permit a breath test was based on reasonable grounds.

Benolkin contends that her refusal was reasonable under *Gunderson v. Commissioner of Public Safety*, 351 N.W.2d 6 (Minn.1984). In *Gunderson* the supreme court held that a driver who submits to a breath test is obligated to submit to a blood or urine test if the breath-testing machine does not work. *Id.* at 7. We do not read *Gunderson* to require this exact sequence in every situation. The officer is not limited to only a blood or urine test alternative;

if another Intoxilyzer machine is available and functioning properly, the officer may again request a breath test.

■ Benolkin also asserts that her refusal was reasonable under *Exsted v. Commissioner of Public Safety*, 375 N.W.2d 594 (Minn.Ct.App.1985). In *Exsted* the driver twice attempted to provide a breath sample. The test was discontinued both times because of radio frequency interference. The officer requested a third test and Exsted refused, stating that he should not be required to blow into the Intoxilyzer all night. This court reversed the trial court and held that Exsted's refusal was reasonable.

The facts of *Exsted* are distinguishable. Benolkin did not furnish any breath samples; the officer, who inserted two different test records into the Intoxilyzer, was able to determine that the first machine was not functioning before requesting a breath sample. Additionally, it was clear that the alternative Intoxilyzer was operating properly, and Benolkin was not being asked to repeat a futile act. *Exsted* does not require a determination that Benolkin's refusal was reasonable.

■ Finally, Benolkin argues that the officer should not have transported her to another jurisdiction, across municipal boundaries, to obtain a breath test. No provision of Minn.Stat. §§ 169.121 or 169.-123 prevents a certified police officer, after having made a lawful arrest within the proper jurisdiction, from transporting the driver to a neighboring jurisdiction to use an Intoxilyzer machine to administer a breath test.

### DECISION

The trial court's order sustaining the revocation of appellant's driving privileges is affirmed.

Affirmed.